UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
NAQUAZIA GRESHAM,                                                    **Docket No:**

                              Plaintiff,

            -against-                                         **COMPLAINT**

CITY OF NEW YORK, NEW YORK CITY POLICE
OFFICER MARLON PHILLIP, in his individual and
official capacities, and POLICE OFFICER JOHN DOES
#1-10 (fictitiously named), in their individual and official          **PLAINTIFF DEMANDS A**
capacities,                                                           **TRIAL BY JURY**

                            Defendants.
------------------------------------------------------------------------- X

Plaintiff, NAQUAZIA GRESHAM, by her attorneys, HORN WRIGHT, LLP, complaining

of Defendants CITY OF NEW YORK, NEW YORK CITY POLICE OFFICER MARLON

PHILLIP, in his individual and official capacities, and POLICE OFFICER JOHN DOES #1-10

(fictitiously named), in their individual and official capacities (collectively, "Defendants"),

respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action to recover damages by Plaintiff NAQUAZIA GRESHAM against

Defendants CITY OF NEW YORK, NEW YORK CITY POLICE OFFICER MARLON PHILLIP,

in his individual and official capacities, and POLICE OFFICER JOHN DOES #1-10 (fictitiously

named), in their individual and official capacities for physical, mental, and financial injuries she

suffered as a result of the actions and/or omissions of Defendants, committing acts under color of

law and depriving Plaintiff of rights secured under 42 U.S.C. § 1983, 18 U.S.C. § 2721, *et seq.*,

the Fourth Amendment to the Constitution of the United States, and laws of the State of New York.

**JURISDICTION AND VENUE**

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, 18 U.S.C. § 2721, *et seq.*, and the Fourth Amendment of the United States Constitution. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983, 18 U.S.C. § 2721, *et seq.*, and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned Constitutional provisions.

3.      Supplemental jurisdiction over Plaintiff's state law claims exists pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within Brooklyn, New York; the actual place of employment of the individually named Defendants and Doe Officers is within Brooklyn, New York in the Eastern District of New York; and Brooklyn, New York is within the jurisdiction of the Eastern District of New York.

**PARTIES**

5.      Plaintiff NAQUAZIA GRESHAM ("GRESHAM" and/or "Plaintiff") is a resident of the State of New York, who resides within Brooklyn, New York.

6.      Upon information and belief, at all relevant times described herein, Defendant CITY OF NEW YORK ("NYC") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York. Upon information and belief, at all relevant times described herein, Defendant NYC, by its agents and/or employees, operated, maintained, and controlled the New York City Police Department ("NYPD"), including all supervising officers and police officers thereof.

7.      Upon information and belief, at all relevant times described herein, Defendant NEW YORK CITY POLICE OFFICER MARLON PHILLIP ("PHILLIP") is a Police Officer who

is being sued in his individual and official capacities, and is an employee of Defendant NYC and NYPD. At all relevant times described herein, PHILLIPS was acting under color of state law within the scope of his employment as a police officer employed by Defendants CITY and NYPD, and works under the supervision, direction, and/or control of his supervisors in NYPD.

8.    NEW YORK CITY POLICE OFFICER JOHN DOES #1-10 ("DOES") are members of NYPD who are being sued in their individual and official capacities, are employed by Defendant CITY and NYPD and were police officers, detectives, sergeants, or supervisors. Upon information and belief, at all relevant times described herein, DOES were acting under color of state law within the scope of their employment as members of the NYPD and employed by Defendant CITY and NYPD. Plaintiff does not know the real names and shield numbers of DOES.

### COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

9.    Plaintiff duly served a Notice of Claim upon NYC on April 16, 2025, within ninety days of the events giving rise to her claims.

10.    NYC conducted a hearing pursuant to NY Gen. Mun. Law § 50-h on June 5, 2025.

11.    At least thirty (30) days have elapsed since the presentation of said claim and NYC has not adjusted the same and has failed and neglected to make any payment of such claim and cause of action.

12.    The instant action is being commenced against Defendants within one year and ninety days after the accrual of the cause of action herein alleged, all in compliance with General Municipal law § 50-i.

### FACTUAL ALLEGATIONS

13.    At all relevant times described herein, Defendant NYC and NYPD maintained supervisory and oversight functions for police officer placements, assignments, and clearances,

including their ability to access the personal information of individuals who have been taken into custody.

14. At all relevant times described herein, Defendant NYC and NYPD had the ability and authority to remove and/or reassign police officers from particular placements, restrict their ability to access certain information, and investigate issues or complaints arising from their conduct.

15. At all relevant times described herein, Defendant NYC and NYPD maintained procedures governing police officer interactions with individuals, including documenting and accessing their personal information during the course of the intake process.

16. At all relevant times described herein, individuals who were taken into custody were required to present an ID, and disclose their names, addresses, and phone numbers during intake and processing.

17. These individuals provide their personal information solely for the purposes of the intake and booking, with the understanding that said information will remain confidential, and not shared, used, or accessed outside the scope for which it was provided.

18. Upon information and belief, at all relevant times described herein, Defendants had access to, maintained, and acted as custodians of said information.

19. Upon information and belief, at all relevant times described herein, Defendants held themselves out as responsible recordkeepers and custodians, who would keep the personal information confidential, and solely record it for intake and booking purposes.

20. Upon information and belief, at all relevant times described herein, Defendants NYC and DOES were responsible for supervising police officers that could access the personal information of individuals, the database in which it was stored, as well as control the purpose for

4

which such information could be used.

21.     Individuals, including Plaintiff, maintained a legitimate expectation of privacy and professionalism in providing their information.

22.     On January 25, 2025, Plaintiff called the NYPD following a disagreement with her ex-boyfriend.

23.     Once officers arrived, Plaintiff's ex-boyfriend made a false accusation against Plaintiff, resulting in her being taken into custody by NYPD.

24.     The arresting officers spoke with Plaintiff and agreed she had not committed any crimes, but stated per protocol for domestic incidents, they needed to bring her in for booking.

25.     Plaintiff was taken to central booking, where she was required to present an ID, and provide her name, address, and phone number, all with the understanding that said information would remain confidential, secure, and solely used for purposes pertaining to the intake and booking procedures.

26.     Plaintiff was released shortly thereafter.

27.     On the morning of January 27, 2025, Plaintiff received a call from a blocked number. Plaintiff did not answer the call.

28.     On the morning of January 28, 2025, Plaintiff received another call from a blocked number, however she answered this time.

29.     The caller, PHILLIP, identified himself as "Marlon" and proceeded to say "Hey, I don't know if you remember me from central booking yesterday… I thought you were a really nice lady, so I wanted to know if I could take you out."

30.     Plaintiff had no recollection of PHILLIP, nor had she provided her personal information to him.

31.    PHILLIP once again asked if he could take Plaintiff on a date. However, as Plaintiff felt uncomfortable with the situation, she declined.

32.    PHILLIP continued to persistently call and text Plaintiff from various numbers.

33.    Plaintiff inquired how PHILLIP had obtained her contact information, to which PHILLIP replied that he had simply asked DOES at central booking.

34.    PHILLIP requested Plaintiff's information in order to contact her from his personal cellphone, and DOES provided same.

35.    Plaintiff had not consented to PHILLIP accessing her information or for Defendants NYC and/or DOES to distribute her information.

36.    At no point had Plaintiff agreed to, or granted permission for, her phone number to be accessed for any purposes other than intake process.

37.    PHILLIP and DOES' (collectively, "Defendant POs") conduct was willful, wanton, and in reckless disregard of Plaintiff's rights and expectation of privacy.

38.    In permitting PHILLIPS to access, and/or DOES to distribute, Plaintiff's personal information outside the limited scope for which Plaintiff had provided it, Defendants violated Plaintiff's reasonable expectation of privacy.

39.    Upon information and belief, at all relevant times described herein, police officers, such as Defendant POs, had the ability to access intake information, even after the person was released from custody.

40.    While acting as custodians of Plaintiff's personal information, Defendant NYC and NYPD permitted Plaintiff's information to be accessed by Defendant POs for purposes beyond the limited scope for which it was provided. Plaintiff did not consent to Defendants accessing or distributing her information for any purpose other than identification and recording during the

6

intake process.

41.    Plaintiff feared for her safety due to PHILLIP's repeated and unwanted calls and messages which, at times, came from various or blocked phone numbers.

42.    On January 29, 2025, PHILLIP sent Plaintiff another unsolicited text message. Plaintiff replied that she had not given anyone permission to access her information, and that the situation made her feel unsafe and uncomfortable.

43.    Plaintiff contacted the precinct where she had been arrested and notified them that she had been receiving calls and texts from PHILLIP, who stated he had received her information from DOES.

44.    An officer confirmed that PHILLIP was an NYPD officer and provided his captain's name and number, as well as the number for the Internal Affairs Bureau ("IAB"), and further informed Plaintiff that all information, including names, addresses, and phone numbers, was accessible to any NYPD officer.

45.    Plaintiff was fearful and no longer trusted the NYPD.

46.    Plaintiff's fear was further heightened by PHILLIP's knowledge of her personal information, including her phone number and home address, and his ability to access her information at will.

47.    Plaintiff reasonably feared PHILLIP would escalate the repeated calls and messages into monitoring, following, or stalking, causing significant emotional distress.

48.    Plaintiff isolated herself as she felt her safety, and the safety of her young children, had been compromised and was afraid to leave her home or to take her daughters to and from school.

49.     On the occasions when Plaintiff was able to bring herself to leave her home, she was constantly fearful that she was being watched and/or stalked.

50.     Defendants owed Plaintiff a duty to exercise reasonable care in ensuring her information remained confidential and solely used within its limited intended scope – to complete the intake process, and that Defendant POs maintain a degree of professionalism.

51.     At all times herein, Defendant NYC breached its duty of reasonable care by failing to adequately secure Plaintiff's information.

52.     Defendant NYC and NYPD's inadequate supervision of Defendant POs was a substantial factor in PHILLIPS's ability to access, and DOES' ability to distribute, Plaintiff's information.

53.     Upon information and belief, at all relevant times described herein, Defendant NYC and NYPD were responsible for exercising reasonable care in securing Plaintiff's information, including taking reasonable steps to ensure the information was only accessed for its narrowly intended purpose.

54.     At all times herein, Defendant NYC breached its duty of reasonable care by failing to implement and enforce reasonable supervisory and restrictive measures designed to ensure confidentiality and prevent improper use and/or access.

55.     As a result of the incident, Plaintiff has suffered severe emotional and mental distress, anxiety, and fears of possible retaliation towards herself or her boyfriend, an inmate presently detained at the NYPD.

**COUNT I**
**42 U.S.C. § 1983 – Unlawful Search and Seizure**
(***Against Defendants PHILLIPS and DOES***)

56. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

57. On or about January 25, 2025, Plaintiff was subjected to unlawful searches and seizures by Defendants, deprived of her freedom, subjected to harassment, stalking, and fear, and her personal information improperly used and accessed by Defendants in violation of the civil and Constitutional rights afforded to her *via* the Fourth Amendment of the United States Constitution, as well as 42 U.S.C. § 1983. All acts by Defendants were committed under color of law, thus depriving Plaintiff of rights secured by federal law and the United States Constitution.

58. On or about January 25, 2025, Defendants unlawfully seized and searched Plaintiff, thus depriving her of her freedom and violating her civil rights. Said searches and seizures were made without probable cause, especially given the arresting officers' numerous assurances that they had arrested Plaintiff purely due to protocol for domestic incidents, however they did not believe she had committed any infractions.

59. Such searches and seizures were ordered, directed, and carried out by Defendants, all of whom actively instigated and encouraged the violation of Plaintiff's rights.

60. Furthermore, as a direct result of said actions, Plaintiff was unjustly exposed to stalking, harassment, and fear.

61. Defendants individually and collectively knew at the time of Plaintiff's unlawful searches and seizures, and at all times since then, that there was no reasonable and lawful basis to support Defendants' actions.

62.     Defendants knew or should have known that they were violating federal law and Plaintiff's Constitutional rights set forth herein and had failed to prevent same and, therefore, acted in concert to harm Plaintiff.

63.     Defendants, separately and in concert, acted outside the scope of their jurisdiction and without authorization of law and each of Defendants, separately and in concert, acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of her right to freedom from illegal search and seizure of her personal property, person, and effects – all rights that are secured to Plaintiff by the Fourth Amendment of the United States Constitution and by 42 U.S.C. § 1983.

64.     As a direct and proximate result of the aforesaid acts of Defendants, Plaintiff suffered great mental anguish and violation of rights from then until now and she will continue to so suffer in the future having been placed in substantial fear and mental injury, as a result of the foregoing acts of Defendants.

65.     As a result of said baseless false and unlawful search and seizure and abuse of process, Plaintiff has suffered continued emotional damage, including prolonged stress and anxiety, fear, frustration, and other expenses incurred.

66.     As a proximate result of Defendants' intentional and malicious actions, Plaintiff was stalked, placed in fear of her life, and other special damages, and has suffered great pain and mental anguish, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees pursuant to Title 42 § 1988.

## COUNT II
### 18 U.S.C. § 2721, *et seq.* – Violations of the Driver's Protection Privacy Act
### (*Against All Defendants*)

67.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

68.     The Driver's Privacy Protection Act, 18 U.S.C. § 2721(a), *et seq.* ("DPPA") prohibits a person or organization from knowingly obtaining, disclosing, or using personal information contained in motor vehicle records for any purpose not specifically permitted under 18 U.S.C. § 2721(b).

69.     Defendants violated and continue to violate 18 U.S.C. § 2721, *et seq.* by intentionally obtaining, using, re-disclosing, and/or impermissibly using Plaintiff's motor vehicle records without knowledge, consent, or authorization for purposes not specifically permitted under the DPPA.

70.     Plaintiff is an individual within the meaning of 18 U.S.C. § 2725(2).

71.     The name, address, telephone number, and other information that Defendants obtained from motor vehicle records pertains to Plaintiff's "personal information" as defined under 18 U.S.C. § 2725(3).

72.     The contents of Plaintiff's records obtained by Defendants constitute a "motor vehicle record," because they contain records that "pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles," within the meaning of 18 U.S.C. § 2725(1).

73.     Defendants were not authorized recipients under 18 U.S.C. § 2721(c).

74.     Defendants knowingly used the personal information they obtained from the DMV

11

motor vehicle records to stalk and harass Plaintiff.

75.     Defendants did not obtain express consent from Plaintiff to obtain her personal information from the DMV or use her information for this purpose.

76.     As a direct and proximate result of the aforesaid acts and activities of Defendants, Plaintiff has sustained harm including, but not necessarily limited to, intrusions upon her seclusion, invasions of her privacy, stalking, harassment, and fear for her safety.

77.     As a proximate result of Defendants' intentional and malicious actions, Plaintiff was stalked, placed in fear of her life, and other special damages, and has suffered great pain and mental anguish, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees pursuant to Title 42 § 1988.

### COUNT III
### *Monell*
### (*Against Defendant NYC*)

78.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

**Failure to Supervise and Failure to Train**

79.     Defendant NYC was responsible for supervising, overseeing, and controlling its respective subordinates, including Defendant POs.

80.     Defendant NYC had an express and/or implied duty to provide a reasonably safe environment for individuals, including Plaintiff. At a minimum, it had a duty to ensure the confidentiality and security of Plaintiff's personal information.

81.     The countenancing of this behavior created an environment within the NYPD wherein employees and members, such as Defendant POs, were allowed to continue with their behavior, which has led to the rights of individuals, such as Plaintiff, being violated.

82.     Defendant NYC intentionally failed to adequately supervise, control, oversee, train, and/or monitor its employees and members who had a history of engaging in official misconduct, and failed to implement measures to prevent its employees and members from conspiring with each other to cover up their official misconduct.

83.     Defendant NYC intentionally failed to adequately supervise, control, oversee, train, and/or monitor Defendant POs from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the rights of individuals, including Plaintiff.

84.     Defendant NYC negligently hired, retained, and/or supervised Defendant POs, when NYC knew or should have known that they posed a threat to individuals.

85.     Defendant NYC knew or should have known of Defendant POs' propensity for the conduct which caused Plaintiff's injuries, prior to the occurrence of the injuries.

86.     At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

87.     Defendant NYC was aware there was a substantial likelihood that granting Defendant POs the ability to access personal and confidential information at any time would deprive individuals of their rights, but failed to take adequate measures to resolve or remedy the wrong.

88.     Defendant NYC's failure and refusal to adequately investigate Defendant POs' actions, acquiescence in their conduct, failure to take any remedial action against them, allowing

them to remain employed as police officers, gross negligence in its supervision of them, and deliberate indifference to the rights of others by failing to act on information that rights were being violated, subjects Defendant NYC to supervisory liability for the violations perpetrated against Plaintiff.

89.    At all times herein relevant, Defendant NYC screened, hired, and/or assigned police officers to particular placements, job duties, and clearances.

90.    At all times herein relevant, Defendant NYC was responsible for exercising reasonable care in hiring and retaining employees of NYPD, including Defendant POs.

91.    Defendant NYC breached its duty of reasonable care in hiring and retaining Defendant POs by failing to take reasonable steps to ensure that Defendant POs were fit to be in positions where they would have unfettered access to the confidential information of individuals.

92.    As a direct and proximate result of Defendant NYC's negligent hiring, Plaintiff suffered injuries and damages including, but not limited to, emotional distress, anxiety, and psychological and/or psychiatric care, and has suffered and will continue to suffer loss of enjoyment of life.

93.    That, by reason of the foregoing, Plaintiff was caused to be placed in substantial fear for her life, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorneys' fees.

14

**Custom, Policy, and Practice**

94.     It was the custom, policy, and practice of Defendant NYC to tolerate, condone, and encourage violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by its employees and members.

95.     Employees and members of NYC, such as Defendant POs, were aware at all times alleged in this Complaint that their conduct would not be investigated or questioned, and that they would receive no reprimand or punishment for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

96.     Failing to supervise, train, and reprimand such employees caused the injuries to Plaintiff through the actions and inactions of Defendants.

97.     By maintaining a *de facto* policy of automatic indemnification, Defendant NYC caused the injuries to Plaintiff through the actions and inactions of Defendants.

98.     It was the custom, policy, and practice of Defendant NYC to blatantly ignore complaints and/or widespread allegations of malfeasance in order to shield the NYPD from receiving any negative publicity that would be generated from an investigation of misconduct.

99.     This custom, policy, and practice of Defendant NYC to ignore complaints and/or widespread mistreatment and other malfeasance created an environment where foreseeable violations by its employees and members were rampant, including the violations of Plaintiff's rights.

100.    Defendant NYC's failure to take action against its employees and members, such as Defendant POs, was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

15

101.    As authorized representatives of Defendant NYC, Defendant POs' conduct constituted a custom, policy, and practice which renders Defendant NYC liable to Plaintiff as a "Person" acting under the color of state law.

102.    That, by virtue of Defendant NYC's failure and refusal to adequately investigate Defendant POs' actions, acquiescence in Defendant POs' conduct, failure to take any remedial action against Defendant POs, allowing Defendant POs to remain employed, gross negligence in its supervision of Defendant POs, and deliberate indifference to the rights of others by failing to act on information that rights were being violated by Defendant POs, Defendant NYC exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

103.    As a proximate result of Defendant NYC's customs, policies, and practices for creating an environment that tolerates, encourages, and condones such Constitutional violations, Plaintiff was caused to be placed in substantial fear for her life, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees.

### COUNT IV
### Pendant State Claim – Negligent Hiring, Improper Supervision, and Improper Retention
### (*Against Defendant NYC*)

104.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

105.    Upon information and belief, it was the custom, policy, and practice of NYC to hire police officers, such as Defendant POs, without conducting the appropriate background checks, investigations, and/or psychological evaluations.

106.    Upon information and belief, it was the custom, policy, and practice of NYC to conduct inadequate investigations of police officer candidates, as was done with Defendant POs.

107.    Upon information and belief, it was the custom, policy, and practice of NYC to inadequately supervise the actions and conduct of police officers, including Defendant POs.

108.    Upon information and belief, it was the custom, policy, and practice of NYC to continue to employ police officers, including Defendant POs, despite it being known that such police officers consistently violate the rights of persons such as Plaintiff.

109.    These customs, policies, and practices were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries.

110.    NYC is therefore liable for violations of Plaintiff's rights, and Plaintiff has suffered damages therefrom.

111.    At all times herein relevant, NYC was responsible for supervising police officers, including performance of assigned duties and adherence to professional boundaries.

112.    At all times herein relevant, NYC owed Plaintiff a duty to use reasonable care in supervising its police officers, including ensuring that police officers adhered to appropriate boundaries and did not engage in conduct that would foreseeably harm an individual.

113.    As a result of the above-described conduct, Plaintiff was caused to be placed in substantial fear for her life, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and

psychological treatment, therapy, and counseling, all to Plaintiff's damage, in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

## COUNT V
### Pendant State Claim – Intentional Infliction of Emotional Distress
### (*Against Defendants PHILLIPS and DOES*)

114.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

115.    Defendant POs acted with extreme and outrageous conduct, which intentionally and/or recklessly caused severe emotional distress and bodily harm to Plaintiff.

116.    The actions taken against Plaintiff by Defendant POs were atrocious and transcended all bounds of decency, such that this conduct would be utterly intolerable in a civilized society.

117.    Plaintiff suffered severe emotional distress, including severe mental anguish, due to Defendant POs' intentional and/or reckless, extreme, and/or outrageous conduct.

118.    As a result of the above-described conduct, Plaintiff was caused to be unlawfully seized, placed in substantial fear for her life, sustain mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, and has suffered great mental anguish, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages.

## COUNT VI
## Pendant State Claim – *Respondeat Superior*
## (*Against Defendant NYC*)

119.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

120.    By virtue of Defendant POs' employment with Defendant NYC, and their actions during the course of their employment, Defendant NYC is liable for Defendant POs' actions under a theory of *respondeat superior*.

121.    As a result of the above-described conduct, Plaintiff was caused to be placed in substantial fear for her life, sustain mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

## JURY DEMAND

122.    Plaintiff demands a Trial by Jury of all causes of action so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

A.    Under the First Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

C.    Under the Second Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

D.    Under the Third Count, in the amount of ONE MILLION DOLLARS

($1,000,000.00), plus attorney's fees;

E.    Under the Fourth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00);

F.    Under the Fifth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages;

G.    Under the Sixth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00);

H.    Costs and disbursements of this action; and

I.    Such other and further relief as the Court deems just and proper.

Dated:  Garden City, New York
        March 10, 2026

Respectfully Submitted,
**HORN WRIGHT, LLP**
*Attorneys for Plaintiff*

By:    /s/ *Sheetal Paul*
       Sheetal Paul, Esq.
       400 Garden City Plaza, Suite 500
       Garden City, New York 11530
       Tel: 516.355.9696
       shp@hornwright.com